Consolidated case numbers 19-3051 and 19-3052. George Bavelis et al versus Ted Doukas et al. Arguments not to exceed 15 minutes per side. Mr. Hogan, you may proceed for the appellant cross-appellate. Thank you. May it please the court. Good afternoon. I would like to reserve three minutes for rebuttal and have spoken with the courtroom deputy regarding that. Your honors, the backdrop for this appeal is a conclusively established extensive fraud by Mr. Doukas that was designed to deprive Mr. Bavelis, my client, of substantially all of his assets. Now Mr. Bavelis is well into his 80s at this point. Yet the district court below rejected a factually supported recommended award of $1 million in punitive damages by the bankruptcy court based on what I submit is a legal argument that was not raised by the Doukas parties and which was not supported by the cases that the district court actually cited in reaching its conclusion. And I submit that that's a reason. Counselor, can I ask you a quick question about the facts? I've been relying upon this opinion from 2013 from the bankruptcy court. 490 bankruptcy reporter 258 recitation of facts. Do you dispute any of the fact finding or rely on any different fact finding than what's in that opinion? That is the principal basis of the fraud, your honor. In fact, the district court here held that those are collateral estoppel as to the Doukas defendants. There were some additional facts found by the bankruptcy court in terms of the reprehensibility of the conduct and the intent to harm that support the award of punitive damages. And those were adopted by the bankruptcy court and are not challenged on appeal here. So it's I would say the 2013 decision supplemented by those additional findings adopted by the district court. Thank you. And so I submit that the bankruptcy court taking the or the district court taking it upon itself to consider and rule upon a legal issue that was not requires a specific objection and that only the specific objections asserted will be reviewed de novo by the district court. To be fair, we didn't find much case law one way or the other defining what specific means under the statute. Although the Supreme Court has said that review should be confined to those matters that were specifically objected. Well, I think that the a specific objection versus an argument that supports that objection. Is it your position that you not only have to make the a specific objection on a subject matter, but you also have to articulate the sole argument that can be considered? I think you have to articulate the legal reason why you object, and that should be what the district court considers, Your Honor, because for the very reason that we saw here, which is that no one raised the argument adopted by the district court, which is that compensatory that Mr. Bovelis is out of pocket loss was not compensatory damages, but instead equitable and therefore punitive damages were not available under Florida law. No one had a chance. I'm struggling with the concept because it seems to me that a court always has a duty to find and employ the correct law. And under your argument, if someone makes an incorrect argument on the law and there is a different law out there, then is your position that one would be foreclosed from looking at them correctly? Applicable law that that doesn't make sense to me. I don't think I don't think that's what I'm attempting to say, Your Honor. I believe that the bankruptcy court should limit. I keep saying the bankruptcy court. District court should limit its de novo review to the specific legal challenge made by the objecting party, because otherwise there's no opportunity to address that issue with the district court and to correct any misunderstandings that it may have, which is what happened here. No one briefed the issue with the district court because it was not objected to or a basis of a specific basis of the objection asserted by the Dukas parties. Well, did the district court get it wrong? So the district court recharacterizes the one hundred and sixteen thousand dollars as incidental damages. And is that wrong? I mean, the bankruptcy court kind of talks about it as compensatory damages, but also talks about unjust enrichment. Unjust enrichment, as I understand, would sound in law, but incidental damages would sound in equity. So if you had been able to present the argument to the district court that you're saying you couldn't present, what would be your argument that the district court did it wrong? Yes, Your Honor, the district court did do it wrong with all due respect to the to the court. Um, one, the conclusion that an out of pocket loss that Mr. Bovelis suffered because Dukas defrauded him into providing one hundred and sixteen thousand dollars for estate planning services that he never intended to provide was not compensatory. I submit is simply wrong. Compensatory damage is designed to compensate the victim. And so the comment that it's not a compensatory damage, I believe, is incorrect. But but even beyond that, can you have compensatory damages and rescission? Absolutely. Or is it unjust enrichment? The bankruptcy court discussed both. I don't think it really matters because Florida has abolished the distinction between law and equity that a lot of the cases cited by Mr. Dukas relied upon, which was that a court in equity cannot also award legal relief like punitive damages that no longer exists in Florida. And it no longer exists in the Sixth Circuit either. Right. But when the when the Florida courts are trying to figure out whether an action sounds in law or equity, they're still making some kind of distinction because they're saying punitive damages don't lie for in actions in equity. So they're they're obviously still believe there's something there. So my assumption is that they would sort of go through the laborious process of tracing this back to common law and figuring out which kinds of actions were sounded in law and which kind sounded in equity back before the merger of the two. So I guess a couple of responses to that, Your Honor. First, I agree with you that unjust enrichment was historically an action at law called, I believe, money had and received. And so that the award by the bankruptcy court of compensatory damages was, in fact, a legal remedy. But I also submit that Florida courts, including the Engle decision from the Florida Supreme Court, makes clear that an award of actual monetary damages isn't even necessary to support punitive damages. And that's because there is a statute that authorizes punitive damages in Florida. Some of the cases cited by Mr. Dukas on the equitable issue say, even in courts of equity, absent a statutory authorization, we can't authorize punitive damages. But here, in any civil action, which is defined in Florida as merged actions, no longer distinguishing between law and equity, as long as the culpability standard is satisfied, an award of punitive damages is available. And that, I believe, is consistent with the Engle decision. And as long as an injury is established for purposes of the fraud claim, that's all you need. But here, in fact, a compensatory damage of Mr. Bevelis' out-of-pocket loss was specifically found and awarded by the bankruptcy court and adopted by the district court. And that's not before you on appeal, those findings. And that's 116,000 is the out-of-pocket loss. That's correct. Now, I would note the bankruptcy court also found, and this was all by clear and convincing evidence, by the way, that there were significant other injuries that supported the fraud, even if it wasn't reducible to a monetary award, such as the loss of Mr. Bevelis' interest in certain LLCs, the costs he had to incur in setting aside those transfers. And I would submit that if punitive damages were not available in a case like this, then an unrepentant fraudster, an adjudicated unrepentant fraudster like Mr. Dukas, could avoid punishment simply because rescission and an award of out-of-pocket losses provides more complete relief than benefit of the bargain damages. And that's where I think the district court was confused in that it referred to compensatory damages when what I think the court was really referring to was benefit of the bargain. And I submit under Engel and any of the other cases that are cited, you don't need to have benefit of the bargain damages in order to have an award of punitive damages under the statute of Florida. Did you have no opportunity to raise an objection in the district court? I mean, argument is this wasn't really presented, but there's no, you couldn't have filed some kind of motion for reconsideration or something to reconsider? We considered that, but it elected to appeal promptly. We appealed within a week or two of the decision. Just strategically, that was the decision we made rather than reconsideration. Okay. It leaves the question, however, of what should the court do? Well, we know that the recommended decision was issued in January of 2017, and the district court issued its decision, adopting everything legally and factually, not until January of 2019. The only issue before the court is then this ruling that the damages weren't, were equitable and therefore there was no punitive damages. Otherwise all of the factual findings as to reprehensibility, as to intent to harm, and thus the factual findings supporting the amount of punitive damages recommended have been adopted and they're not challenged on appeal. So therefore, your honors, I submit that the case should be reversed, but with an instruction to the district court to adopt the award rather than further proceedings. Thank you. Thank you. Yes, your honors. Thank you. Good afternoon and may it please the court. I'm Mark Brown. I represent the Dukas defendants in this case. First of all, let me apologize. We just now have a thunderstorm going over my office in Knoxville. Boom. It's not anything I had for lunch today or anything like that. It's just the thunderstorm. Basically, what this comes down to is that we can use all kinds of words we want to and call Ted Dukas an arrogant fraudster, whatever you want to call him. Um, and that's been, you know, putting opinions here and there. But the fact of the matter is, is that Mr. Bovelis is didn't get what he wanted in the district court and he's changing his theory here today. All along from his original complaint in 2010, his amended complaint in 2013, his second amended complaint in 2014, he has sought equitable remedies in the form of the assignment agreements that were executed down in florida. That's what he's been after the whole time. So the district court, I thought count 11 of the complaint asked for damages. I thought kind of 11 clearly sounded in law 11. You are correct, your honor. It does. It does have an application for damages in there. But in this case, the district court awarded equitable damages in the form of the rescission bankruptcy court didn't the bankruptcy court said he won on rescission and then said he won on what they called unjust enrichment sounds in law. And then the district court kind of the while the bankruptcy court said unjust enrichment, but also said compensatory. And then the district court kind of reformulated all of that without separating it out sort of thing by claim. Well, and your honor, that brings me to the biggest point that I have with this. And that is this under the statute 28 U. S. C. Section 1 57 C. One. The district court judge is required to conduct a de novo review. That's the standard that Congress has put in place a de novo review. It's not an abuse of discretion. It's not clearly erroneous or any of that. It's de novo, which means I had to look it up in the dictionary yesterday just to be sure that what it means is, you know, you start a new start over and I can give you an example. It's probably not the greatest example. But here in Tennessee, we have what's called General Sessions courts under $25,000. Basically small claims court. If you are in a grief party in General Sessions court, you get the right to appeal the case to circuit court for a trial de novo. And you can either win the case in General Sessions and losing circuit or vice versa. It's happened to me a bunch of times. And that's because the judge is not confined to a record. He looks at the entire thing fresh and new and you don't have to specifically object under 28 U. S. C. 1 57 and say, Oh, wait a minute. These are actually equitable damages. This bankruptcy judge awarded here this. You don't have to do that in this case because he has a de novo review that you can take a look at everything fresh, everything new, put his own eyes on it and his own analysis on it. And that's what happened in this case. And he determined that $116,000 and $600 was a acceptable amount to put the parties back where they were before. And that's key. Mr Brown, I'd like to ask you about the district court's ruling. My reading of the district court was not that the court was finding that this was an equitable remedy, but was finding that this was a compensatory remedy. But that you couldn't get there were no compensatory damages. Therefore, you couldn't get punitive damages under Florida law. And what I'm hearing you argue on appeal is the reason you can't get punitive damages here is because it was an equitable remedy. And I'm not sure the district court really ruled on that basis that there's no punitive damages because of an equitable remedy. It sounds like to me you're coming up with this argument for the first time on appeal to justify what happened at the trial level. Is that fair to say? Respectfully honored, Your Honor. No, it's not fair to say because I'm citing from the district court opinion here. He says that you are entitled to incidental damages for the rescission. He does not at any point. I don't believe and again, I'm subject to correction. I don't know everything that I don't believe he ever used the word compensatory damages. So I may be mixing things up here today. But what I'm district court on his de novo review said incidental to rescission. That's what I'm trying to get across. Okay. Yes. So believe the district court did recognize and incidental damages as being an equitable remedy. Correct. And therefore, you could not get punitive damages under Florida law because it was an equitable remedy. I believe that's what the district court was ruling. I believe that is respectfully, Your Honor, what the district court was, was what said in its opinion. And okay, yeah, I understand everybody's got different varying degrees and where they read things. But that's how I read it. And that brings me to and I'm sure Your Honor's know that not only do we have the issue with respect to the the the appellee of Mr Babel is doing more also have a cross appeal here. Yeah, let me I'm sorry, let me just make sure I understand what's going on. So my the way I was looking at it was, quite frankly, I thought the district court was was holding that if there are no compensatory damages, you don't get punitive damages under Florida law. And you're saying it's something different than that is what the district court was ruling. Yes, I'm saying that I think the district court specifically did not rule that these were compensatory damages. They were incidental damages to the equitable remedy that they were saying. I understand that. But I thought the reasoning of the district court was because it didn't find any compensatory damages. You could not get punitive damages under Florida law. Is that not what the district court ruled? I think Your Honor. Yeah, I think you're correct in that respect. Okay. And that seems to be in this all case seems to say my reading of those cases appears to be that you can get punitive damages under Florida law, even when you don't have any compensatories. And I think under the reading of those those cases, Your Honor, you are correct in that. Okay, but now you're arguing on appeal that you can justify the district court's ruling because the district court awarded incidental damages, which you're now characterizing as equitable relief. And then you're arguing under Florida law, you cannot get punitive damages based on equitable relief. Is that fair to say what you're arguing? That would be fair to say. Okay, so my question is, I want to make sure you didn't. Why didn't you argue that before the and you therefore cannot get punitive damages? I don't see you arguing that before the district court. We did not. We filed our objections to the findings of fact and conclusions of law. And what we objected to was the $1 million. Okay, so my next question is, if you didn't argue before the district court, normally, if you haven't argued before the district court, you forfeited on appeal. But we can make exceptions to that and not say you forfeited it. Why should we not say you forfeited that argument here on appeal? Well, the reason we didn't forfeit it, Your Honor, respectfully, is because we did object to the punitive damages award. And under his de novo review, the district court came up with this, using his own reasoning and analysis, came up with this for being the basis for not awarding punitive damages under Florida law. That's where we're coming from in this case. In other words, your argument is the district court got to do its own legal analysis, find the right law, as Judge Strange calls it, whether we think he was right or wrong, but he tried to find the right law. And so we should also try to find the right law. That's correct. Well, I think under your standard of review on this case, Your Honor, at this point, I think it's also a de novo review. So I think that it's beholden to everybody to try and get to the, you know, to the right law here. But we do think the district judge made the absolute right decision. He determined. Let me ask you, Counselor, I'm looking at the district court's decision. And the district court says the bankruptcy court recommended $116,000 in damages under a theory of unjust enrichment. As with rescission, the Dukas defendants did not contest awarding these damages under a theory of unjust enrichment. Rather, they contested awarding any damages in their steadfast assertion that Mr. Govellis could not show fraudulent inducement. And then his conclusion is that even if, even if, the Dukas defendants had contested the doctrine of unjust enrichment as applied to the two checks, this court would still have the power to order the return of the $116,000 as damages incidental to rescission and designed to make Mr. Govellis hold. Thus, this court adopts the that you didn't challenge it in unjust enrichment, and that even if you had, he could still adopt that amount. He could as incidental. So where, where in the opinion does it say this is, this is incidental, this is equitable? It seems to me, this is right at the reasons, none of which the Dukas defendants have challenged. And so that's how I'm going to set the dollar amount. Now is that, is the language I just read from you, does that not explain this issue? The $116,600 in damages awarded by the Bankruptcy Court, yeah, we did not challenge that. We challenged only the punitive damage award. So that's. But your argument is based on the availability or non-availability of punitive damages relevant to the cause of action to which they are appended. I'm reading you from the court's decision that says you didn't contest the theory of unjust enrichment. And as Judge Larson has already indicated, that's a law. That's a law decision, not an equity decision. So why doesn't that resolve the issue? Resolve it in favor of Mr. Bovellos? Yes. Okay. I don't think it resolves the issue simply because respectfully, Your Honor, they were looking for an equitable remedy. They wanted rescission of these, these assignments. That's what they were looking for. They weren't looking for, for a, you know, I mean, obviously they're asking for punitive damages, but that has to do with the fact that they've long asserted that Ted Dukas is nothing more than an unrepentant fraudster. So, but. But the problem is that the background of that is that the Bankruptcy Court, as it says here, decided it on a theory of unjust enrichment. And this court recognized that and said you didn't challenge it. And I'm saying even if you had challenged it, you would lose because I could do it incidentally. So if you didn't challenge it and that was the basis of the Bankruptcy Court's decision, aren't we right back at a law or remedy? We're right back at $116,000 for unjust enrichment. That's where we are. Which is a remedy at law. That is a remedy at law. To which, to which punitives may attach, right? And, and if that's the case, you have to go back to Florida law and see if punitive damages are appropriate in this instance, your honor. And that brings me back to the other point that the cross appeal is about. This shouldn't have ever been in this court to begin with because there was no jurisdiction there. These cases were Florida state law claims. They deserve to be, to, to be litigated in a Florida state court. They should have never been in Bankruptcy Court. Never should have been there because the jurisdiction wasn't related to, no matter what the arguments they make, it was not related to jurisdiction with respect to the bankruptcy case. This had no bearing on Mr. Bevelis's bankruptcy case at all. He confirmed, proposed, and executed a 100% plan that paid all of his creditors in full and held back some claims that belonged to his family in order to keep jurisdiction. These were Florida state law claims in the Florida court. Yes, your honor. Counsel, the claims were brought though before the confirmation occurred, correct? Correct. Okay. Yes. So you're advocating, I guess your, your rule would be that anytime a plan is confirmed, all adversarial proceedings just go away regardless of whether the plan resolved. They're no longer for bankruptcy court. They have to be dismissed and go back to state court. Is that what you're arguing? Well, I'm advocating that, but it's not without authority. The Resorts International case does say after confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. So it's not something that we're just pulling out of the air. It's, is it still related to this cause of action or this bankruptcy case? It had no effect on his estate at all. And I see my time's up, your honors. Thank you. But isn't, one quick question, but isn't it related here because at issue here was post, post-confirmation misconduct. And why would that not be within the jurisdiction of the bankruptcy court? Well, it has to have a conceivable effect under the case law, including the Wolverine Radio case from this court, the sixth circuit, which says it must have a related, it must, excuse me, if I can quote, the outcome could alter the debtor's rights, liabilities, option, or freedom of action, either positively or negatively, and in which any way impacts upon the handling and the administrative center of the bankruptcy estate. Any money that was going to come from George Bovellos from these state law claims was going to George Bovellos or his family. It wasn't going to pay creditors. They were already paid. So it belonged in Florida, and that's going to be our position till the day we die, I guess, something like that. Thank you very much. Are there any more questions from the panel? Thank you. You may have your rebuttal time. Yes. Thank you, your honor. And with respect, to correct you, the issues in the adversary proceeding mostly arose before the bankruptcy case was even filed. They were asserted long before plan confirmation, and they all either directly or indirectly were based on claims that would provide a benefit to Mr. Bovellos' bankruptcy estate, i.e., in terms of personal guarantees that he had made or monies that would be coming directly to him. He was, in fact, the Chapter 11 debtor in this case. And under Wolverine Radio, the test for related to jurisdiction is extremely broad. If it can have any conceivable benefit on the estate, there is jurisdiction. And as Judge Bush, I believe, noted, the test for jurisdiction is at the time of the filing. It's not post-confirmation. And I'll rely on our briefing on that. We've laid that out, I believe, in extensive detail. And even the Third Circuit, which Mr. Brown cites for the close nexus test for cases that arise post-confirmation, that arise or are filed post-confirmation, has been rejected by the Third Circuit in cases that were filed before confirmation. So even the Third Circuit would support the existence of related to jurisdiction here. Mr. Hogan, let me ask you a quick question about the merits. Is your best authority this statute for the proposition that punitive damages are available when a plaintiff elects a rescission remedy? I think I was going to cite the statute for you as part of my rebuttal, but I also think Engle is. And here's why. Because I don't believe the characterization of this, whether by Mr. Brown or the district court, as incidental or inequitable is an accurate statement. Because let's look at what was actually rescinded. What was rescinded were assignments of Mr. Bovelis's interest in certain LLCs, a promissory note with the Dukas entity known as Bovelis. Actually, those were the only things rescinded. The $116,000 relates to checks that Mr. Dukas induced Mr. Bovelis to write on the promise of, I'm going to give you estate planning advice. That was part of the larger fraud designed to deprive Mr. Bovelis of all of his assets, but it's in no way incidental to the rescission of those instruments. So I submit that since the characterization is equitable. But in fact, here, that is an inaccurate characterization. Because as we know, unjust enrichment is legal. And in fact, the bankruptcy court made clear it was really fraud that supported the unjust enrichment award. And it was not incidental to anything. It was based on a specific fraudulent promise by Mr. Dukas that induced the payment of these funds. And it's an out-of-pocket compensatory damage award. I see my time is up. Thank you. We thank you both for your arguments and your briefing. The case will be taken under advisement and an opinion rendered in due course. This is the only argument for this time period. Deputy, you may adjourn court. Thank you, your honors. Thank you. Thank you. Thank you. This honorable court is now adjourned.